UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MILLER FRANK JOHNSON,
ET AL.,

    Plaintiffs,

v.

                                    Case No. 8:87-cv-369-T-24 TBM

GEORGE H. SHELDON,

    Defendant.
_____/

## **O R D E R**

This cause comes before the Court for consideration of two motions: (1) Defendant's First Motion to Exit Consent Decree (Doc. No. 1565) and (2) Defendant's Supplemental Motion to Exit Consent Decree (Doc. No. 1577). These motions were considered by United States Magistrate Judge Thomas B. McCoun III. Judge McCoun has filed his report recommending that the motions be granted in part. (Doc. No. 1611). All parties were furnished copies of the Report and Recommendation and were afforded the opportunity to file objections pursuant to 28 U.S.C. § 636(b)(1). Objections to the Magistrate's Report and Recommendation were filed by both parties. (Doc. No. 1612, 1613). Upon consideration of the Report and Recommendation and the parties' objections thereto, and upon this Court's independent examination of the file, including reviewing the transcript of the hearing that was held on April 9, 2009 (Doc. No. 1594), it is determined that the Report and Recommendation (Doc. No. 1611) should be adopted.

### **I. Background**

At issue in these motions is whether four districts--Suncoast Region ("SCR"), District 8 ("D-8"), District 14 ("D-14"), and District 15 ("D-15")--have complied with the community

compliance exit criteria set forth in the Stipulation Regarding Exit Criteria that was executed by the parties on February 12, 1993 ("1993 Stipulation"), as modified by the Court's Order dated March 19, 2004 (Doc. No. 1551), such that they may exit the Consent Decree and end this litigation. Pursuant to the 1993 Stipulation, the level of compliance required to exit is defined as follows:

> 1. 85 percent of all class members will achieve positive results on 6 of the 7 (85%) community compliance areas.
> 2. Each district will exit any individual community compliance area when 85 percent or more people in the sample meet the requirements of any compliance area(s). Monitoring will continue for the full sample across all seven community compliance areas until the required performance level of 85 percent has been achieved in all seven compliance areas. Monitoring of those compliance areas where the standard has been previously achieved shall be considered technical assistance and any future scores shall not affect the district(s) ability to exit overall.
> 3. Each district will exit independent of the performance of any other district when the performance criteria stated on 1 and 2 above have been achieved.

(Doc. 1605, p. 5 of 18).

The definition of the class has been an issue in several Orders. (Doc. No. 54, 246, 1498, 1516). The class definition includes "those patients discharged from GPW [G. Pierce Wood Memorial Hospital] into a community treatment facility." (Doc. No. 1498). In an Order dated January 15, 2003, the Court clarified this class definition by stating that "patients who move out of the catchment area or who refuse treatment lose their status as class members." (Doc. No. 1498). Thereafter, on April 11, 2003, this Court further clarified the class definition and stated the following:

> [C]lass members have the right to make treatment decisions, including the decision to refuse treatment. Individuals who refuse all treatment lose their status as class members. Clearly, the Court did not intend the refusal of treatment to include sporadic refusals of medication, such as the refusal of certain medications due to

> side effects or pregnancy. Nor did the Court intend the definition to apply to those individuals who refuse certain treatments or certain treatment facilities only to change their minds a short time later, or to those individuals who are not competent to refuse treatment. . . . Refusal of treatment means a refusal of all treatment for a significant period of time.

(Doc. No. 1516).

Based on the community compliance reviews conducted in 2007 and 2008, Defendant contends that the four remaining districts have complied with the community compliance exit criteria set forth in the 1993 Stipulation, because each district achieved compliance in at least six of the seven community compliance areas in 2007 or 2008. In response, Plaintiffs challenge whether certain class members were improperly excluded from these reviews due to Defendant improperly classifying certain patients as no longer being members of the class. Specifically, Plaintiffs challenge whether patients classified as "movers" (those who moved out of the catchment area) and "refusers" (those who refused all treatment for at least 90 days) were improperly excluded.

With regards to patients classified as "movers," Defendant takes the position that according to this Court's Order stating that "patients who move out of the catchment area . . . lose their status as class members," it properly excluded patients who moved out of the catchment area, even if such patients later moved back. (Doc. No. 1498). With regards to patients classified as "refusers," Defendant takes the position that if a patient refused all treatment for at least ninety days, such patient is deemed to have refused all treatment for a significant period of time, and according to this Court's April 11, 2003 Order, such patient is no longer a member of the class.

The monitor reviewed the 2007 and 2008 community compliance reviews, and she evaluated Defendant's compliance with the community compliance exit criteria under three scenarios: (1) under Defendant's definition of the class, which excluded all patients who moved

out of the catchment area or who refused all treatment for at least ninety days, (2) under Defendant's definition of the class, plus the excluded movers and refusers identified by the Monitor (with the assumption that all of these excluded movers and refusers would fail the compliance reviews), and (3) under Defendant's definition of the class, plus the excluded refusers identified by the Monitor (with the assumption that all of these excluded refusers would fail the compliance reviews). Below is the Monitor's summary of Defendant's compliance with the seven community compliance areas under each scenario (Doc. No. 1605, p. 15):

**2007**

|  | Defendant's definition of the class (which excludes movers and refusers) | Defendant's definition of the class, plus movers and refusers identified by the Monitor | Defendant's definition of the class, plus refusers identified by the Monitor |
|---|---|---|---|
| D-8 | 6 out of 7 | 6 out of 7 | 6 out of 7 |
| D-14 | 7 out of 7 | 1 out of 7 | 6 out of 7 |
| D-15 | 6 out of 7 | 3 out of 7 | 6 out of 7 |
| SCR | 7 out of 7 | 6 out of 7 | 6 out of 7 |

**2008**

|  | Defendant's definition of the class (which excludes movers and refusers) | Defendant's definition of the class, plus movers and refusers identified by the Monitor | Defendant's definition of the class, plus refusers identified by the Monitor |
|---|---|---|---|
| D-8 | 6 out of 7 | 6 out of 7 | 6 out of 7 |
| D-14 | 7 out of 7 | 3 out of 7 | 7 out of 7 |
| D-15 | 7 out of 7 | 5 out of 7 | 7 out of 7 |
| SCR | 5 out of 7 | 5 out of 7 | 5 out of 7 |

Accordingly, under Defendant's definition of the class and interpretation of the community compliance exit criteria, all four districts should be allowed to exit the Consent

4

Decree, because each district achieved compliance in at least six of the seven community compliance areas in 2007 or 2008.  However, under Plaintiffs' definition of the class (which includes both movers and refusers) and interpretation of the community compliance exit criteria, none of the districts should exit the Consent Decree, because none of the districts achieved compliance in all seven of the seven community compliance areas in 2007 or 2008.  Additionally, under the third alternative definition of the class (which includes refusers but does not include movers), D-14 and D-15 can exit the Consent Decree, because those two districts achieved compliance in all seven of the seven community compliance areas in 2008.

After reviewing the motions and holding a hearing on April 9, 2009, Judge McCoun made the following conclusions and recommendations: With regards to the issue of whether Defendant correctly classified movers as no longer being members of the class once they move out of the catchment area, even if they later return, Judge McCoun agreed with Defendant's interpretation of this Court's January 15, 2003 Order.  As such, Judge McCoun overruled Plaintiffs' objection regarding the exclusion of movers from the compliance reviews.

With regards to the issue of whether Defendant correctly classified refusers as no longer being members of the class after refusing all treatment for 90 days, Judge McCoun rejected Defendant's position.  Instead, Judge McCoun agreed with Plaintiffs' position that when this Court stated in its April 11, 2003 Order that in order to be excluded from the class, the patient must refuse all treatment for ***a significant period of time***, the Court meant refusal for more than 90 days.  Additionally, Judge McCoun agreed with the Monitor that eight of the patients that were excluded from the compliance reviews as refusers, but who were identified by the Monitor

5

as having not consistently refused all treatment for at least twelve to fourteen months, should not have been excluded from the class.[1]

As a result of these conclusions regarding which patients made up the class, Judge McCoun recommended that D-14 and D-15 be allowed to exit from the Consent Decree, because those two districts achieved compliance in all seven of the seven community compliance areas in 2008. Defendant argued that the Court's supervision had gone on long enough, and given its substantial compliance with the community compliance exit criteria, the Court should also allow D-8 and SCR to exit from the Consent Decree. Judge McCoun rejected Defendant's argument based on the 1993 Stipulation.

In the 1993 Stipulation, the parties specifically agreed that the community compliance exit criteria "shall be the sole and exclusive method for assessing the Defendants' performance and determining their completion of designated community-based obligations."[2] (1993 Stipulation, p. 7, ¶ 7). Additionally, the 1993 Stipulation provides that the exit criteria shall be the sole and exclusive method for determining termination under the Consent Decree unless the parties agree otherwise and obtain the Court and Monitor's approval. (1993 Stipulation, p. 4, ¶ 1).

## II. Plaintiffs' Objections to the Report and Recommendation

After Judge McCoun issued his Report and Recommendation, Plaintiffs filed their objections thereto. Specifically, Plaintiffs object to Judge McCoun's determination that

---

[1] Four were in SCR, and four were in D-15). (Doc. No. 1611, p. 6).

[2] The 1993 Stipulation was filed at Doc. No. 343. However, the Court issued an Order on July 12, 1994 (Doc. No. 457) that was incorrectly docketed and resulted in the Clerk's Office improperly striking Doc. No. 343. As such, on September 29, 2009, the Court called the attorney for the Monitor and requested that he file a copy of the 1993 Stipulation so that it would be in the record.

Defendant properly excluded from the compliance reviews patients that moved out of the catchment area but later returned. In support of their position that movers should not have been excluded from compliance reviews, Plaintiffs argue: (1) movers should be treated similarly to refusers and should not be excluded if they have not moved out of the catchment area for a significant period of time, and (2) excluding movers infringes on their constitutional right to travel because it results in them forfeiting their right to treatment based on their decision to travel. These arguments have no merit.

The Court rejects Plaintiffs' argument that patients who move out of the catchment area should be treated the same as patients who refuse treatment, and as such, movers should not lose their status as class members if they return to the catchment area before a significant period of time elapses. Requiring a patient to refuse all treatment for a significant length of time before excluding the patient from the class ensures that the patient's right to make treatment decisions is protected and recognizes that a short-term refusal of treatment can have a legitimate medical purpose or reason (such as side-effects, pregnancy, or incompetency) that does not necessarily indicate a long-term decision to refuse all treatment. However, moving out of the catchment area is viewed by the Court as more of a long-term decision. If a patient decides to move and reside elsewhere, implicitly, the patient is making a decision to terminate his or her treatment within the catchment area.

Furthermore, excluding movers from the compliance reviews does not infringe on their right to travel. Choosing to move and reside outside of the catchment area is different from traveling. Also, the movers' right to treatment is not affected in any way; instead, movers are simply no longer included in the compliance reviews. Judge McCoun noted in his Report and

7

Recommendation that movers who returned to the catchment area were not denied treatment when they returned, and instead, such patients are treated as "priority clients" upon their return.

Accordingly, the Court overrules Plaintiffs' objections to the Report and Recommendation. As such, the Court adopts Judge McCoun's recommendation that the Court find that Defendant did not improperly exclude movers from the compliance reviews.

## III.  Defendant's Objections to the Report and Recommendation

Defendant also filed objections to Judge McCoun's Report and Recommendation. Specifically, Defendant objects to Judge McCoun's recommendation that D-8 and SCR not be allowed to exit the Consent Decree. In support of its contention, Defendant makes the following arguments: (1) there is new information showing that SCR achieved compliance in all seven of the seven community compliance areas in 2007; (2) Judge McCoun incorrectly applied the community compliance exit criteria; and (3) the Court should employ the "flexible approach" set forth in <u>Horne v. Flores</u>, 129 S. Ct 2579 (2009), and find that the Consent Decree should be terminated based on Defendant's substantial compliance. Upon review, the Court defers ruling on the first argument and rejects the remaining two arguments.

### A.  New Information Regarding One Refuser

Defendant first argues that there is new information showing that one of the four refusers in SCR that the Monitor and Judge McCoun determined was still part of the class was not auditable in 2007. Specifically, Defendant contends that this one refuser was in a state treatment facility for the entire period covered by SCR's 2007 compliance review, and as a result, that patient should not have been considered. As such, Defendant argues that if that refuser is

excluded from the 2007 compliance review, then SCR achieved compliance in all seven of the seven community compliance areas in 2007.

The current motions have been pending for more than a year, and this Court is not inclined to delay its ruling based on this new information. As such, the Court will permit Defendant to file a motion and raise the issue of whether SCR fully satisfied the community compliance exit criteria in 2007 based on this new information regarding the one refuser. The Court will consider this new argument after it is fully briefed and both Plaintiffs and the Monitor have had an opportunity to review the new information and respond.

### B. Application of the Community Compliance Exit Criteria

Next, Defendant argues that Judge McCoun incorrectly applied the community compliance exit criteria by requiring two levels of compliance, one of which he deemed required compliance in all seven of the seven community compliance areas.[3] For the first time, Defendant now argues that paragraphs 1 and 2 of the community compliance exit criteria describing the level of compliance required to exit the Consent Decree is contradictory. This argument has no merit.

Pursuant to the 1993 Stipulation, the level of compliance required to exit the Consent Decree is defined as follows:

---

[3]The seven community compliance areas can be briefly described as follows: (1) placement in the community in a less restrictive setting than GPW; (2) clinical assessments; (3) functional assessments; (4) treatment planning services based upon professional judgment at the level and intensity needed; (5) opportunities to exercise choice based upon available alternatives and to participate in the development of his/her SIP; (6) level and intensity of services, described in the SIP goals, to meet the class members' needs; and (7) detailed progress notes. In the remainder of this Order, the Court sometimes refers to these seven community compliance areas as seven community-based benefits.

1. 85 percent of all class members will achieve positive results on 6 of the 7 (85%) community compliance areas.
2. Each district will exit any individual community compliance area when 85 percent or more people in the sample meet the requirements of any compliance area(s). Monitoring will continue for the full sample across all seven community compliance areas until the required performance level of 85 percent has been achieved in all seven compliance areas. Monitoring of those compliance areas where the standard has been previously achieved shall be considered technical assistance and any future scores shall not affect the district(s) ability to exit overall.
3. Each district will exit independent of the performance of any other district when the performance criteria stated on 1 and 2 above have been achieved.

(Doc. 1605, p. 5 of 18).

Based on the plain language set forth above, there are two levels of compliance: First, 85% of the class must achieve positive results in six of the seven community compliance areas. This first level of compliance ensures that each class member is obtaining at least six of the seven community-based benefits. Thus, this first level focuses on whether each member is generally receiving the community-based benefits as a whole.

Second, each of the seven community-based benefits must have been received by at least 85% of the class. This second level of compliance ensures that each of the community-based benefits are being provided to at least 85% of the class. Thus, this second level focuses on the provision of each specific community-based benefit.

Accordingly, there are two levels of compliance that must be met before a district can exit the Consent Decree, and these two levels are set forth in paragraphs 1 and 2 of the community compliance exit criteria. Defendant's argument that there are not two levels of

compliance and/or that paragraphs 1 and 2 are contradictory borders on frivolous.[4] Furthermore, to the extent that Defendant argues that in order to exit the Consent Decree, there must only be compliance in six of the seven community compliance areas, Defendant's position is negated by the plain language cited above, which clearly requires compliance in all seven of the seven community compliance areas.

### C. Substantial Compliance

Next, Defendant argues that based on the recent Supreme Court case, Horne v. Flores, 129 S. Ct. 2579 (2009), this Court should terminate the Consent Decree. Specifically, Defendant argues that based on the "flexible approach" described in Horne regarding the evaluation of motions filed under Federal Rule of Civil Procedure 60(b)(5)[5] and Defendant's substantial compliance with the community compliance exit criteria, this Court should terminate the Consent Decree.

In Horne, the Supreme Court stated the following regarding Rule 60(b)(5):

[T]he Rule provides a means by which a party can ask a court to modify or vacate a judgment or order if a significant change either in factual conditions or in law renders continued enforcement detrimental to the public interest. The party seeking relief bears the burden of establishing that changed circumstances warrant relief, but once a party carries this burden, a court abuses its discretion when it refuses to modify an injunction or consent decree in light of such changes.

---

[4] Equally as frivolous is Defendant's argument, raised for the first time in its objections to the Report and Recommendation, that paragraph 2 of the community compliance exit criteria contains a typographical error in the second sentence such that the phrase "six of the" was inadvertently left out. According to Defendant, paragraph 2 should read as follows (with the allegedly missing phrase added in brackets): "Monitoring will continue for the full sample across all seven community compliance areas until the required performance level of 85 percent has been achieved in all [six of the] seven compliance areas." There is no support for Defendant's argument.

[5] Rule 60(b)(5) provides that a court may relieve a party from a judgment when applying it prospectively is no longer equitable.

> Rule 60(b)(5) serves a particularly important function in what we have termed "institutional reform litigation." For one thing, injunctions issued in such cases often remain in force for many years, and the passage of time frequently brings about changed circumstances-changes in the nature of the underlying problem, changes in governing law or its interpretation by the courts, and new policy insights-that warrant reexamination of the original judgment.

Id. at 2593 (internal quotation marks and citations omitted). The Court went on to state:

> [I]n recognition of the features of institutional reform decrees, we have held that courts must take a "flexible approach" to Rule 60(b)(5) motions addressing such decrees. A flexible approach allows courts to ensure that responsibility for discharging the State's obligations is returned promptly to the State and its officials when the circumstances warrant. In applying this flexible approach, courts must remain attentive to the fact that federal-court decrees exceed appropriate limits if they are aimed at eliminating a condition that does not violate [federal law] or does not flow from such a violation. If [a federal consent decree is] not limited to reasonable and necessary implementations of federal law, it may improperly deprive future officials of their designated legislative and executive powers.
>
> For these reasons, a critical question in this Rule 60(b)(5) inquiry is whether the objective of the . . . . declaratory judgment order . . . has been achieved. If a durable remedy has been implemented, continued enforcement of the order is not only unnecessary, but improper.

Id. at 2494-95 (internal quotation marks and citations omitted).

Defendant argues that in 2007, D-8 failed to achieve compliance in only one of the seven of the community compliance areas. Specifically, in the community compliance area of treatment planning, D-8 scored an 84%, which is 1% less than the minimum required score of 85% needed for compliance. (Doc. No. 1573, p. 21 of 26) Therefore, Defendant argues, if in 2007, just one of the patients in D-8 that had scored negatively in treatment planning had actually scored positively, then D-8 would have achieved the required minimum score of 85% in all seven of the community compliance areas.[6]

---

[6] Defendant's substantial compliance argument is also based on the assumption that the Court accepts Defendant's contention based on new information that one of the refusers in SCR should have been excluded from the 2007 compliance review, and if that refuser had been excluded, then SCR would have achieved

While the Court acknowledges that Defendant has undertaken sweeping modifications and improvements to the community mental health system within the catchment area in the past ten years, the Court finds that it must honor the parties' agreement regarding how to determine when the Consent Decree should be terminated. As previously stated, the parties specifically agreed in the 1993 Stipulation that the community compliance exit criteria "shall be the sole and exclusive method for assessing the Defendants' performance and determining their completion of designated community-based obligations." (1993 Stipulation, p. 7, ¶ 7). Additionally, the 1993 Stipulation provides that the exit criteria shall be the sole and exclusive method for determining termination under the Consent Decree unless the parties agree otherwise and obtain the Court and Monitor's approval. (1993 Stipulation, p. 4, ¶ 1). Given that the parties have not agreed that the Consent Decree should be terminated, and given that SCR and D-8 have not yet demonstrated full compliance with the community compliance exit criteria, termination is not warranted under the terms of the 1993 Stipulation. Furthermore, the Court finds that the application of the flexible approach delineated in Horne does not change the Court's conclusion that the objective of the Consent Decree has not yet been achieved. Therefore, the Court declines Defendant's invitation to terminate the Consent Decree, despite Defendant's substantial compliance.

---

compliance in all seven of the community compliance areas. However, as previously stated, the Court has deferred ruling on this argument at this time and has directed Defendant to file a motion addressing this issue.

**IV. Conclusion**

Accordingly, it is now **ORDERED AND ADJUDGED** that:

(1) The Magistrate Judge's Report and Recommendation (Doc. No. 1611) is adopted and incorporated by reference in this Order of the Court.

(2) Defendant's First Motion to Exit Consent Decree (Doc. No. 1565) and Defendant's Supplemental Motion to Exit Consent Decree (Doc. No. 1577) are **GRANTED IN PART AND DENIED IN PART**: The motions are **GRANTED** to the extent that the Court finds that District 14 and District 15 have fully satisfied the community compliance exit criteria and are authorized to exit the Consent Decree and the Court's supervision and Orders thereunder; otherwise, the motions are **DENIED**, except that Defendant may raise the issue of whether the Suncoast Region fully satisfied the community compliance exit criteria in 2007 based on the new information regarding the one refuser that Defendant contends should have been excluded from the 2007 compliance review. Monitoring shall continue in accordance with the Consent Decree and the community compliance exit criteria as to District 8 and the Suncoast Region.

**DONE AND ORDERED** at Tampa, Florida, this 30th day of September, 2009.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

Copies to:
The Honorable Thomas B. McCoun III
Counsel of Record